### In re FORD PRODUCTS CORPORATION, Debtor.

**FORD PRODUCTS CORPORATION and the Official Committee of Unsecured Creditors of Ford Products Corporation, Plaintiffs,**

v.

**The BANK OF NEW YORK, Defendant.**

**Bankruptcy No. 92–B–20622 (HS).**

**Adv. No. 93–5255A.**

United States Bankruptcy Court, S.D. New York.

Oct. 15, 1993.

LeBoeuf, Lamb, Leiby & Macrae, New York City, for debtor.

Michael R. Gottlieb, Middletown, NY, for defendant.

Robinson, Brog, Leinwand, Genovese & Gluck, P.C., New York City, for Official Committee of Unsecured Creditors.

Hochfelder & Weininger, White Plains, NY, for F.D.I.C.

## DECISION ON SECURED CREDITORS' OBJECTION TO CONFIRMATION OF CHAPTER 11 PLAN

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Two secured claimants, the Federal Deposit Insurance Corporation ("FDIC") and the Bank of New York ("BNY") have objected to confirmation of the Chapter 11 petition of reorganization proposed by the debtor, Ford Products Corporation. FDIC, as receiver of Dollar Dry Dock Savings Bank holds a first mortgage against the debtor's warehouse property in Rockland County, New York. Approximately $700,-000.00 is due FDIC on the first mortgage. BNY has foreclosed on its secured claim and holds a second secured position under a judgment of foreclosure in the approximate amount of $970,000.00.

## FACTUAL BACKGROUND

On April 1, 1993, the debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court and has continued as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108. Prior to the petition date, the debtor was in the business of manufacturing oil and electric water heaters, oil burners, oil furnaces and storage tanks for wholesale distribution. Due to severe cash flow shortages, the debtor ceased its manufacturing operations prior to the petition date. The debtor's major asset is the warehouse building in Rockland County which contains approximately 170,000 square feet and which previously housed the debtor's manufacturing operations. The debtor seeks to emerge from Chapter 11 as a real estate holding company by subdividing and leasing the space in its warehouse to prospective commercial tenants.

Both FDIC and BNY object to the treatment of their secured claims under the plan of reorganization and question the debtor's ability to finance the plan. The debtor's plan provides that the maturity of the secured claims will be extended to thirteen years from the effective date. The interest rate payable will average 8% per year, but only 4% will be payable in calendar years 1994 and 1995, 12% will be payable in calendar years 1996 and 1997, and 8% thereafter. No payment of principal will commence until the year 2000. Hence, the plan calls for a negative amortization of the secured claims. Additionally, the secured claimants must execute a subordination agreement whereby the priority of their liens would be subordinate to the lease rights of the tenants located at the warehouse. In other words, the tenants would receive a nondisturbance covenant from the secured claimants that in the event of the debtor's default on the secured obligations, a purchaser at a foreclosure sale would be required to take title to the premises sub-

ject to the terms and provisions of the lease agreements.

The debtor's plan proposes to fund the plan with the rents to be derived from the prospective leases at the warehouse. However, the debtor's financial projections make no allowance for vacancy contingencies. Additionally, the projections reveal a negative cash flow over the first five years.

## DISCUSSION

Apart from the issue of feasibility under 11 U.S.C. § 1129(a)(11), especially in light of the failure to include a vacancy contingency, and aside from the negative amortization problem, the plan fails to satisfy 11 U.S.C. § 1129(b)(2) which provides:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims *retain the liens* securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity to the extent of the allowed amount of such claims....

11 U.S.C. § 1129(b)(2)(A)(i)(I) (emphasis added).

The plan requirement that the secured claimants must execute subordination agreements in favor of the lease interests of prospective tenants is a fatal flaw which violates the requirement that they retain their liens to the extent of the allowed amount of their claims.

The absolute priority claims of the secured interests would be subordinated under the plan to the lease interests of the tenants at the premises over the objections of the secured claimants. In these circumstances, it cannot be concluded that the secured claimants will retain their liens under the plan in accordance with 11 U.S.C. § 1129(b)(2) as such liens currently prime the lease interests of the debtor's tenants. The debtor's plan has skewed the concept of absolute priority which is codified by the requirement in 11 U.S.C. § 1129(b)(1) that an involuntary cramdown must be fair and equitable. The liens which the debtor's plan proposes to give to the secured claim-

ants will be modified by the fact that in the event of a default, the secured claimants will be unable to exercise a senior interest over the debtor's tenants. This violation of the lien retention requirement in 11 U.S.C. § 1129(b)(2)(A)(i)(I) fails to satisfy the fair and equitable standard, as expressed in 11 U.S.C. § 1129(b)(1). Therefore, the debtor's plan may not be confirmed.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. The debtor's plan, which requires the secured claimants to subordinate the priority of their liens to the leasehold interests of the debtors' tenants, fails to satisfy the requirement in 11 U.S.C. § 1129(b)(2)(A)(i)(I) that the holders of secured claims retain the liens securing such claims. Such a fatal flaw prevents the plan from meeting the fair and equitable standard as expressed in 11 U.S.C. § 1129(b)(1).

3. The debtor's application for confirmation of its Chapter 11 plan is denied.

IT IS SO ORDERED